IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARVIN DANILO ROJAS TOJ,
                *Petitioner*,

    v.

MARKWAYNE MULLIN, *et al.*,
                *Respondents*.

1:26-cv-1142-MSN-WBP

**ORDER**

This matter comes before the Court on Marvin Danilo Rojas Toj's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). Petitioner, a citizen of Guatemala, received a final order of removal in 2017 but was granted withholding of removal under the Convention Against Torture ("CAT"). Shortly thereafter, ICE released Petitioner from custody on an Order of Supervision. On January 22, 2026, Petitioner attended a regular ICE check in. On that day, ICE detained him, provided him a notice of revocation of release, and a notice that they intended to remove him to Mexico. Petitioner was afforded a third-country fear interview for Mexico that resulted in a negative fear finding. Petitioner contends that his renewed detention violates 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that the manner in which ICE revoked his Order of Supervision violated both the relevant regulations. For the reasons that follow, the Court agrees and will grant his Petition.

## I.    BACKGROUND

Petitioner is a 42-year-old native and citizen of Guatemala who first entered the United States around 2007. ECF 6-2 ¶¶ 5-6. That same year, DHS officers encountered Petitioner and he was granted voluntary return to Mexico. *Id.* ¶ 6.

On January 27, 2017, Petitioner was convicted of violating Virginia Code § 18.2-371 and was sentenced to 11 months suspended. *Id.* ¶ 8. Three days later, while detained in Richmond City Virginia jail, Petitioner was interviewed by Enforcement and Removal ("ERO") who confirmed he had entered the United States without being admitted or paroled. *Id.* ¶ 9. ICE arrested Petitioner and placed him in removal proceedings. *Id.* ¶ 9.

On August 16, 2017, an immigration judge ordered Petitioner's removal to Guatemala but granted him withholding of removal protection under CAT, preventing his deportation. *Id.* ¶ 10; *see also* ECF 1-1. Neither party appealed that decision. ECF 1 ¶ 15. On August 18, 2017, Petitioner was released on an Order of Supervision. ECF 6-2 ¶ 11; ECF 1-2.

On January 22, 2026, ICE officers apprehended Petitioner when he appeared at a Virginia ICE office for a scheduled appointment. ECF 1 ¶ 12. They served him with the Notice of Revocation of Release and a notice indicating that ICE intended to remove him to Mexico but did not give him an opportunity to contest his detention. ECF 6-2 ¶¶ 12, 13; ECF 6-3 at 1 (Notice of Removal); ECF 6-3 at 2 (Notice of Revocation of Release).

On January 27, 2026, Petitioner was transferred to Texas for removal. *Id.* ¶ 14. On February 11, 2026, Petitioner field a habeas corpus petition in the District Court for the Southern District of Texas ("Southern District of Texas"), claiming fear of removal to Mexico. *Id.* ¶ 16. On February 12, 2026, the Southern District of Texas granted a temporary restraining order to enjoin Petitioner's removal from Texas. *Id.* ¶¶ 17-18. On February 25, 2026, the Southern District of Texas ordered ICE to comply with notice provisions that prevent Petitioner's removal to a designated third country less than seven days after he is provided with notice of the country to which he will be removed. *Id.* ¶ 19.

On March 10, 2026, a Department of Homeland Security Asylum Officer interviewed Petitioner and found he did not establish credible fear in relation to Mexico. *Id.* ¶ 20.

2

On April 4, 2026, Petitioner was transferred to Farmville Detention Center. *Id.* ¶ 22. Petitioner has remained detained ever since and is currently being held at the Farmville Detention Center. *Id.* ¶ 24. On April 28, 2026, the Southern District of Texas again ordered ICE to comply with notice requirements before removing Petitioner to a third country. *Id.* ¶ 21.[1]

On April 28, 2026, Petitioner filed a Habeas Corpus Petition in this district against Robert Guadian, the Field Office Director of ICE Enforcement and Removal Operations' Washington Field Office; Todd M. Lyons, the Acting Director of ICE; Markwayne Mullin, the DHS Secretary; and Todd Blanche, the Acting Attorney General (collectively "Federal Respondents"). ECF 1. The Petition also names Jaffrey Crawford, the warden of the Farmville Detention Center. *Id.* Petitioner seeks his immediate release.

## II.    DISCUSSION

Petitioner argues that his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*. He further argues that ICE failed to follow its regulations in revoking his Order of Supervision.[2] The Court will address each claim in turn.[3]

---

[1] The Court finds that the companion case in the Southern District of Texas has no preclusive effect on this case. *See Marvin Danio Rojas v. Warden*, 1:26-cv-159 (S. D. Tex. 2026). Petitioner's Southern District of Texas case was terminated on April 28, 2026. *Id.* ECF 22, Permanent Injunction (Apr. 28, 2026). The Southern District of Texas adjudicated only one issue: whether Petitioner received the proper notice required by 2025 Guidance regarding third country removals. *See id.* ECF 14, Order ("ORDERED that Respondents shall comply with the notice provisions of the 2025 Guidance as to Petitioner, irrespective of whether the Secretary has determined that the country of removal has provided credible diplomatic assurances that aliens removed to that country will not be persecuted or tortured, and subject to the other requirements in this Order[.]"). While Petitioner also raised challenges to revocation of his release terms, the constitutionality of his detention, and violations of administrative law *Accardi* principles, in that case, those claims were ultimately not adjudicated and were dismissed without prejudice. *Id.* ECF 22 at 2 ("The Court considers Petitioner's Statement to be an implicit abandonment of the other claims that he alleges in his Petition. … ORDERED that the remaining causes of action raised by Petitioner Marvin Danilo Rojas are **DISMISSED WITHOUT PREJUDICE AS ABANDONED**.") (emphasis in original). As such, there is no preclusive effect on the issues raised in this Petition.

[2] Much of Federal Respondents' Opposition contains arguments that are irrelevant to the claims raised by the Petitioner. Despite the Federal Respondent's allegations otherwise, the Petition does not ask this Court to order IJ review of his negative third country determination, nor to have the Court review DHS' third country removal procedures. *Compare* ECF 6 at 11-15 *with* ECF 1 at 15 (requesting no such relief). Petitioner does not ask to re-litigate issues surrounding his reasonable fear determinations and the Court will not analyze claims not before it.

[3] Federal Respondents argue that this Court should decline to exercise jurisdiction over the Petition because Petitioner is a member of the non-opt out class in *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). ECF 6 at 16-18. As another court in this District has thoroughly explained, these arguments are meritless. *See Serpas v. Noem*, 1:25-cv-02369-AJT-WBP, ECF 15 at 3-5 (E.D. Va. Feb. 3, 2026); *see also, e.g.*, *Garcia-Rivera v. Noem*, 1:26-

## A.    Petitioner's Continued Detention

Under 8 U.S.C. § 1231, which governs the detention of noncitizens like Petitioner who have received a final order of removal, noncitizens shall be detained during a ninety-day "removal period" following their final order to effectuate their removal. 8 U.S.C. §§ 1231(a)(1)(A), (2)(A). If DHS is unable to effectuate a person's removal within the 90-day deadline, DHS may release them subject to terms of supervision. 8 U.S.C. §§ 1231(a)(3), (6). DHS may later re-detain a person who has been released on an order of supervision if, for instance, there has been a change in circumstances or DHS becomes able to conduct their removal. *See* 8 C.F.R. §§ 241.4(*l*); 241.13(h)(i)(2). DHS may also continue to detain a noncitizen past the 90-day removal deadline in certain circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024).

While 8 U.S.C. § 1231(a)(6) does not impose an explicit time limit on the length of a noncitizen's detention following a final removal order, the Supreme Court has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed § 1231 to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to § 1231 may only be for a "period reasonably necessary" to secure the noncitizen's removal." *Id.* at 689. The Supreme Court has explained that detention for a period of up to six months is "presumptively reasonable." *Id.* at 701. After this six-month period, a noncitizen's detention becomes presumptively unlawful if they

---

cv-00229-MSN-WBP, ECF 6 at 3 n.2 (E.D. Va. Mar. 2, 2026) (concluding same). As of the date of the entry of this Order, final judgment in *D.V.D.* has been stayed. *See D.V.D. v. Dep't of Homeland Sec.*, 1:25-cv-10676, ECF Nos. 242, 246 (D. Mass. Feb. 26, 2026). Moreover, Petitioner's challenge to his ongoing detention and the revocation of his Order of Supervision raise issues that are substantively different from the claims at issue in *D.V.D.*, which largely focus on the procedural due process protections due to noncitizens subjected to third-country removal. *See D.V.D. v. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2026 WL 521557, at *27-40 (D. Mass. Feb. 25, 2026).

4

"provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal Respondents argue that Petitioner's detention is presumptively reasonable because he has not spent six months in detention, as required by *Zadvydas*. ECF 6 at 6. But, as courts in this Circuit have recognized, "*Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable." *Serpas v. Noem*, 1:25-cv-02369-AJT-WBP, ECF 15 at 7 (E.D. Va. Feb. 3, 2026); *see also Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *8 (D. Md. Jan. 9, 2026) (explaining that "*Zadvydas* did not announce a bright line rule that permits detention for at least six months," but instead created a dynamic standard under which "a habeas petitioner's continued detention may become unjustified at a period short of that six-month mark" (citing *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 370 (D. Md. 2025))); *Abrego Garcia v. Noem*, 811 F. Supp. 3d 741, 761 (D. Md. 2025) (stating that the presumptive six-month period "can be rebutted where the petitioner demonstrates that removal is not reasonably foreseeable"); *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025) (collecting cases from outside this Circuit).

Within the six-month period, a petitioner may rebut the presumption that his detention is reasonable through "proof that 'removal is not reasonably foreseeable.'" *Zavvar*, 2025 WL 2592543, at *6 (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. 2025)). Petitioner has supplied such proof here. Despite receiving a final order of removal roughly nine years ago, the government has never been able to effectuate Petitioner's removal. *See, e.g., Douglas v. Baker*, --- F. Supp. 3d ---, 2025 WL 2997585, at *4 (D. Md. Oct. 24, 2025) (concluding that the government's failure to remove petitioner during the nine years after his order of removal and the three-and-a-half months of his detention constituted evidence against the likelihood of removal); *Zavvar*, 2025 WL 2592543, at *7 (concluding that removal was not

5

reasonably foreseeable where, for seventeen years after petitioner's removal order, respondents either made no efforts to remove petitioner or those efforts were unsuccessful). Petitioner has been granted withholding of removal to Guatemala, precluding his removal to the only country of which he is a citizen. Moreover, while Federal Respondents state that they intend to remove Petitioner to Mexico, *see* ECF 6-3 at 2, it is unclear whether Federal Respondents have obtained travel documents or Mexico's consent for his removal. Although Petitioner has had an interview with an asylum officer regarding his fear of removal to Mexico, he is entitled to review of his removal before an IJ before any such removal could occur. *See Jorge Antonio Garcia-Rivera v. Kristi Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *3 (E.D. Va. Mar. 2, 2026). Under these circumstances, Petitioner's removal within any finite period of time is exceedingly unlikely.[4] *See Jorge Antonio Garcia-Rivera*, 2026 WL 1244545, at *3 (finding that a deportation officer's mere statement that ICE was ready to effectuate Petitioner's removal to Mexico was inadequate to show reasonable likelihood of removal); *Cesar Augusto Ramirez Esquivel v. Perry*, 1:26-cv-966-MSN-IDD, ECF 8 at 4-5 (E.D. Va. May 5, 2026); *Serpas*, 1:25-cv-02369-AJT-WBP, ECF 15 at 7-8 (concluding that petitioner had demonstrated that his removal was not reasonably foreseeable where he had received CAT withholding and the respondents' plan to remove him to Mexico was "still in nascent stages"); *Zavvar*, 2025 WL 2592543, at *7-8 (ruling that petitioner's removal was not reasonably foreseeable where he had been granted CAT withholding to his country of origin and was entitled to contest his removal to a third-party countries); *Portela-Hernandez*, 2026 WL 74042, at *14 (noting that petitioner's removal had no "definite ending point" because petitioner

---

[4] The Court is mindful that the Fourth Circuit has cautioned against expanding *Zadvydas* "beyond the context of the *indefinite and potentially permanent* detention involved there." *Castaneda*, 95 F.4th at 757 (quoting *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022)). But the circumstances here are far different from those presented in *Castaneda*. In *Castaneda*, the Fourth Circuit held that petitioner had not shown that his detention was indefinite and potentially permanent where he was "detained pending the completion of withholding-only proceedings that he voluntarily initiated" and that, necessarily, would come to a close. *Id.* By contrast, here, Petitioner has received CAT withholding preventing his removal to Guatemala and it is entirely unclear that ICE will be able to remove him to Mexico or any other country.

was entitled to contest his removal through a hearing before an IJ before his removal to Mexico could be effectuated).

Federal Respondent's argument that Petitioner is somehow to blame for their inability to remove him is unpersuasive. ECF 6 at 7-8. Petitioner is not required to designate a third country for the Federal Respondents to effectuate his removal. *See* 8 U.S.C. § 1231(b)(2)(A); *Xiao v. Noem*, No. 1:25-CV-2382-MSN-IDD, 2026 WL 1298793, at *4 (E.D. Va. Jan. 30, 2026).

Because Petitioner faces indefinite detention with no reasonable likelihood of removal, his detention violates due process and he is entitled to release.

### B.    Revocation of Petitioner's Order of Supervision

The Court also concludes that Petitioner is entitled to release based on his claim that ICE failed to follow its regulations in revoking his Order of Supervision (Count II).

The *Accardi* doctrine, which requires an agency to follow the procedural safeguards established by its own regulations. *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). An agency's failure to follow those regulations "may result in the invalidation of the ultimate administrative determination." *Id.* Ordinarily, an agency's failure to follow its regulations will only render its determination invalid if an individual can demonstrate that they were prejudiced by the deviation. *Id.* at 267. Prejudice, however, may be presumed where "compliance with the regulation is mandated by the Constitution and where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Santamaria Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2444087, at *5 (D. Md. Aug. 25, 2025) (internal quotation marks omitted).

The INA's implementing regulations provide that a noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). ICE must "afford[] [a noncitizen] an initial

7

informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id*. The regulations also limit who can revoke an order of supervision. They state that the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). "A district director may also revoke release of [a noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Alternatively, under 8 C.F.R. § 241.13, release may be "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Id.* In that case, revocation of release requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Phommachak v. Wesling*, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026) (cleaned up) (*citing Kong v. United States*, 62 F. 4th 608, 619-20 (1st Cir. 2023) (*citing* 8 C.F.R. § 241.13(i)(2))).

Here, the Notice of Revocation of Release in this case cites both different provisions: 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *See* ECF 6-3 at 2. As explained by this Court in *Jorge Antonio Garcia-Rivera, v. Kristi Noem*, Sections 241.4 and 241.13 describe different types of orders of supervision that have different mutually exclusive procedures to revoke release. 2026 WL 1244545, at n.3. However, regardless of which Section serves as the basis for revocation, the *Accardi* doctrine has been violated.

Regarding 8 C.F.R. § 241.4, the Notice of Revocation of Release is signed by Joseph D. Simon, a Field Office Director. ECF 6-3 at 2. As identified by Petitioner, the Notice of Revocation itself violates the relevant regulations. *See* ECF 7 at 6. Simon is a Field Office Director, not an

8

Executive Associate Commissioner, and therefore did not have the authority to revoke Petitioner's Order of Supervision. *See* 8 C.F.R. § 241.4(*l*)(2) ("The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section."). A district director may revoke release only if he determined that it was in the public interest or that circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner. *Id.* The notice makes no indication that Simon made the determination. *See* ECF 6-3 at 2. That alone shows that Petitioner's release violated the *Accardi* doctrine. *See Ha Dong Lu v. Kristi Noem, et al.*, No. 1:25-CV-00390-MSN-IDD, 2026 WL 1244546, at *5 (E.D. Va. Mar. 2, 2026).

As multiple courts have explained, because 8 C.F.R. § 241.4(*l*)(1) is designed to protect noncitizens' fundamental right to be heard before being subjected to detention, when "ICE fails to adhere to it, the challenged action is invalid." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (cleaned up); *see also, e.g.*, *Zhu v. Genalo*, 798 F. Supp. 3d 400, 414-15 (S.D.N.Y. 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165-66 (S.D. Cal. 2025). Federal Respondents' failure to follow 8 C.F.R. § 241.4(*l*)(1) renders his current detention unlawful and entitles him to immediate release. *See, e.g.*, *Vera Briones v. Mullin*, 1:26-cv-00994-MSN-WBP, ECF 5 at 6 (E.D. Va. Apr. 22, 2026) ("[T]he proper remedy for an *Accardi* violation is a petitioner's release").

Regarding 8 C.F.R. § 241.13, for the reasons stated *infra*, Federal Respondents fail to make the showing that based on changed circumstances the removal of petitioner is significantly likely in the foreseeable future. Federal Respondents' suggestion that they are ready to move forward with removal to Mexico, with nothing else, is "plainly inadequate to establish a changed circumstance, let alone one that suggests removal has become significantly likely in the reasonable foreseeable future." *See Jorge Antonio Garcia-Rivera*, 2026 WL 1244545, at *3.

9

As such, Federal Respondents' actions are invalid and constitute a violation of due process under the *Accardi* doctrine.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231, his right to due process, and the *Accardi* doctrine. Accordingly, it is hereby

ORDERED that the Petition is GRANTED; it is further

ORDERED that Federal Respondents immediately release Petitioner with all his personal property; it is further

ORDERED that Petitioner's order of supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13; and it is further

ORDERED Federal Respondents and any of Federal Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

The Clerk is directed to forward a copy of this Order to counsel of record.

/s/
_____
Michael S. Nachmanoff
United States District Judge

May 21, 2026
Alexandria, Virginia